HEARD APRIL TERM, 1873.

## THOMAS vs. RAYMOND.

Under a bill in equity for foreclosure an order of reference to ascertain the amount of the mortgage debt was made in July, 1866, by Chancellor J. An appeal was taken, and, in December, 1867, the order was affirmed by the Court of Errors. In January, 1868, a final order for sale of the mortgaged premises was made by Chancellor C., and in May, 1868, the General commanding the military district made a special military order, which—reciting that Chancellor J. had made an order in the case for sale of certain premises in violation, &c.—set aside, vacated, and annulled said order: *Held*, That the military order applied to the order made by Chancellor J. alone, and that the order for sale made by Chancellor C. remained unaffected by it.

A Court of Equity has no jurisdiction to correct, on the ground of mistake, the order of a military commandant exercising supreme authority.

Where an action for foreclosure is pending in the Circuit where the mortgaged premises are situated, a motion in the cause, to set aside a decree therein, can be made only in the Circuit where the action is pending.

BEFORE ORR, J., AT GREENVILLE, SEPTEMBER, 1872.

This was a bill in equity for foreclosure, filed by William M. Thomas, plaintiff, against Mary Raymond, defendant.

The following statement of facts and dates, in addition to those stated in the opinion of this Court, seems to include everything necessary to a full understanding of the points decided by the Court. The military order, No. 10, mentioned in the special military order dated May 23d, 1868, recited in the opinion of this Court, was issued on April 10th, 1867, after the order of reference of Chancellor Johnson, and before the final order for sale of Chancellor Carroll, both of which are copied in the opinion of the Court. The decree of the Court of Errors affirming the order of Chancellor Johnson was made in December, 1867.—See *Thomas* vs. *Raymond,* 13 Rich. Eq. On December 4th, 1868, the mortgaged premises were sold by the Commissioner, under the decree of Chancellor Carroll. The sale did not realize a sum sufficient to satisfy the mortgage debt, and for the balance a writ of *fi. fa.* was issued. This writ was sent to Charleston, (which is in the First Judicial Circuit of the State—Greenville being in the Eighth,) to be enforced, and thereupon the petition for an injunction or to set aside the decrees mentioned in the opinion of this Court was filed in Charleston by the defendant. Neither the contents of the petition, nor the proceedings under it before Judge Carpenter, Judge of the First Judicial Circuit, are stated in the papers furnished the Reporter.

The case came before His Honor Judge Orr, on the report of the Commissioner on sales. His Honor confirmed the report, and ordered that the purchaser have the writ of assistance to obtain the possession of the premises; that the injunction granted by Judge Carpenter be dissolved, and that the plaintiff have judgment for the balance of the debt after deducting the proceeds to the sale.

Both parties appealed. The plaintiff's grounds of appeal it is unnecessary to state. The defendant's are substantially as follows :

1. That the decree for sale of the mortgaged premises was annulled by the military order of May 23d, 1868.

2. That the rights of the parties were finally determined by the order made by Judge Carpenter.

*Earle & Blythe,* for plaintiff.

*Campbell & Seabrook, Birnie,* contra.

June 19, 1873. The opinion of the Court was delivered by

WILLARD, A. J. Both parties, plaintiff and defendant, are appellants. There are many intricacies presented by the case, arising from the informality of the proceedings of both parties in the Court below. It will not be necessary to solve all the questions arising out of these informalities. As they do not affect the real questions at issue between the parties, and as they sprung out of peculiar and exceptional complications between the military government of 1867 and the civil authorities, and out of the constitutional changes of the Judiciary of the State made in 1868, their solution will be without general interest.

In July, 1866, Chancellor Johnson made a decretal order in equity, upon a bill to foreclose a mortgage, filed by W. M. Thomas, as mortgagee, against Mary Raymond, as mortgagor, with a view to ascertaining the amount due on the sealed note, dated August 25, 1863, secured by the mortgage. The order runs as follows: "Ordered and decreed, that it be referred to the Commissioner to ascertain the amount due on the sealed note, reduced to two thousand five hundred dollars, and that all payments of interest in Confederate money be reduced in the same proportion, and that the parties be at liberty, at the foot of this decree, to take such orders as may be necessary to carry the same into exection by foreclosing

the mortgage, or otherwise." The effect of this decree was to reduce the nominal amount of the sealed note to conform to some idea of the relative value of Confederate currency and legal money in the mind of the Chancellor, but not disclosed by his decree. From this decree the plaintiff appealed to the Court of Appeals. The appeal was dismissed by the Court of Errors, to which Court it was referred, and the order appealed from affirmed. It does not appear that at this stage of the case the defendant, Mary Raymond, objected to the decree, but, on the contrary, it may be assumed that she demanded and obtained its affirmance by the appellate Court. Subsequent to the affirmance of this decretal order, the amount due upon the mortgage was ascertained by a report of the Commissioner, confirmed by a decree of Chancellor Carroll. The decree of Chancellor Carroll was final and complete, as a decree of foreclosure, and bears date January 22d, 1868. It adjudges the amount due on the note and mortgage, orders the sale of the mortgaged premises, declares that such sale shall bar the equity of redemption, directs the mode of distributing the proceeds of the sale, and awards execution for any deficiency that may exist on such sale.

It does not appear that any appeal was taken from this decree, or any steps taken to vacate or modify it. This decree is, in form, a final decree, and must be regarded as final, as to the rights of the parties, unless it is made to appear that it became nugatory under the subsequent orders of the military commandant for the time being. This is the important question in the case, decisive of all the matters presented by the present appeals.

It is alleged that the decree of Ch. Carroll became nugatory and void under the order of the military commandant, dated May 23d, 1868, which declares as follows : " It appearing to the satisfaction of the General commanding that a decree or decretal order has been made in equity by the Hon. William D. Johnson, one of the Chancellors of the State of South Carolina, in the case of William M. Thomas vs. Mary Raymond, whereby the sale of certain premises was ordered in violation of the provisions of Paragraph 1, General Orders, No. 164, (1867,) modifying General Orders, No. 10, (1867,) it is hereby ordered that said decree or decretal order be set aside, vacated and annulled, and that all proceedings in said suit be staid until further orders."

Unless the drecree of Ch. Carroll can be found included within the terms of this order, it will not be necessary to consider the

delicate and intricate questions growing out of the relations between the military and civil authorities of the State at that time.

Ch. Carroll's decree is not to be found in the express terms of description contained in the order. Can we, then, put it there upon principles of construction?

Ch. Johnson's decree substantially answers the description of that which the order was intended to operate upon.

Although that decree did not, in terms, order a sale of the mortgaged property, yet the concluding clause may be regarded as looking to the sale of the mortgaged premises, for that was the only mode of proceeding upon the decree, under the state of the case, so that no case of misdescription is presented. In order to draw the decree of Ch. Carroll within the terms of the order, it is necessary, either that this Court should undertake to correct the order, on the idea of a mistake, or that it be made to appear that the nullity of the decree of Ch. Johnson would, of its own force, render void that of Ch. Carroll.

We know of no precedent or principle of law or equity that would enable us to correct, on the principles of a mistake, the orders of a military commandant exercising supreme authority. The principle on which the Courts of Equity correct mistakes in the contracts of parties is inapplicable, for it proceeds upon the idea that, under some circumstances, the Court is the authorized exponent of the mind of the contracting parties; but such a relation the Court cannot sustain to a military commandant clothed with supreme authority; he is the only exponent of his own mind. The correction of a mistake in the contracts of individuals proceeds on the general or particular equity of the transaction. The military order in question cannot be regarded as in the nature of remedial process between parties litigant, for it sets forth, as the ground moving it, a wrong to military authority as such, namely, disobedience of a military order, and it does not profess to operate as a means of redressing the wrongs or enforcing the rights of the parties affected by its provisions. It must be regarded as purely penal or punitive in its nature. Such a proceeding cannot originate an equity capable of recognition and enforcement in Courts of Equity, as the basis of either a correction or reformation of the order. Nor does it appear that the parties themselves, in their mutual dealings, have acted upon the order, by way of conforming their relative rights to it, so as to make it, virtually, the law of their case by mutual contract

or consent. It can have no other force before us than such as was originally imparted to it by the authority of the military command-ant, and, as such, it cannot be regarded as acting directly on the decree of Ch. Carroll. Did it, then, act indirectly, reaching that decree through its direct action on that of Ch. Johnson ?

At the time this military order was made the parties were already bound by Chancellor Carroll's final decree, pronounced while Chan-cellor Johnson's decretal order was in full force, standing as affirmed by the Court of Errors. What has occurred since to destroy this binding force? Had the final decree been made after the military order had assumed to nullify the decree of Chancellor Johnson, a question might have arisen on an appeal from the final decree, or on other proceedings in the Courts, or before the military authority, looking to its vacation as a nullity, whether it could be sustained independent of the validity of Chancellor Johnson's decretal order. No such question is presented in the present case. It does not appear that any proceedings were taken to annul the final decree, and, therefore, the parties are precluded from saying that the final decree is not conformable to and has not adequate support from the antecedent proceedings in the case. The validity of Chancellor Johnson's order is now in no sense the test of the validity of the final decree. The parties are bound by it on the forensic principle of acquiescence.

No objection was taken to the form of the proceedings before Judge Orr. The objections urged against his order go to the merits. The first ground of appeal is not well taken, for the reasons already shown.

The second ground of appeal takes the position that the rights of the parties had, previously to the order of Judge Orr, been finally adjudicated in the proceedings before the Circuit Court of the First Circuit. The order of the Circuit Court of the First Circuit cannot be regarded in any other light than as a stay of proceedings on the execution. This was the whole scope of the order of May 14th, 1869, and the memorandum on the record, of the nature of the final decision on the motion does not indicate that its character underwent any change. It is true that the words "perpetual injunction," employed in the order made, would seem to indicate an intention beyond that of a mere stay of proceedings *pendente lite*, but those words must be construed by the nature of the proceeding and its relation to the general proceedings in the cause.

It cannot be regarded as a new and independent suit, having for its object a perpetual injunction, for in that case it should have been commenced by bill and not by petition. It must be assumed, on the contrary, to be a collateral application or motion in the original cause. That it was intended as such is apparent from the prayer of the petition, which seeks both to set aside the original decrees and to reinstate the original suit. Such an application could be properly made only in the original cause, and is not the proper subject of a new bill. The original cause was pending in the Eighth Circuit where the mortgaged premises were situated, and in that Circuit alone a motion to set aside the decrees could properly be made. At most, the Circuit Judge of the First Circuit should have confined his interference with the case to a temporary stay of proceedings, to enable the party to make his motion in the Eighth Circuit. The purport of the action of that Court, as far as that action appears on the record before us, is in conformity with this view. It nowhere appears that the Court made any order declaring the decrees or other proceedings void.

The question of the validity of the decrees not having been conclusively adjudicated, the matter came properly before Judge Orr, and he was warranted in making the order appealed from.

The appeals must be dismissed, the order of Judge Orr affirmed, and the cause must be remanded to the Circuit Court for further proceedings.

*Moses,* C. J., and *Wright,* A. J., concurred.